IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| THE STATE OF OREGON, THE STATE OF ARIZONA, THE STATE OF COLORADO, THE STATE OF CONNECTICUT, THE STATE OF DELAWARE, THE STATE OF ILLINOIS, THE STATE OF MAINE, THE STATE OF MINNESOTA, THE STATE OF NEVADA, THE STATE OF NEW MEXICO, THE STATE OF NEW YORK, AND THE STATE OF VERMONT,<br><br>              Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, in his capacity as President of the United States; DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; UNITED STATES CUSTOMS AND BORDER PROTECTION; PETER R. FLORES, in his official capacity as Acting Commissioner for U.S. Customs and Border Protection; and THE UNITED STATES,<br><br>              Defendants. | Case No. 1:25-cv-00077<br><br>DECLARATION OF JENIFER JOHNSON |

I, Jenifer Johnson, declare as follows:

1. I am over the age of 18, competent to testify as to the matters herein, and testify based on personal knowledge, records kept in the ordinary course of business at the Illinois Department of Innovation and Technology ("DOIT"), and information I learned from DOIT personnel whose work I rely upon and who have assisted me in gathering this information from our institution.

2. I am the Chief of Staff at DOIT. As Chief of Staff, I am the principal advisor to the DOIT Secretary to ensure that DOIT operations are aligned with DOIT's strategic goals and that

Page 1 -   DECLARATION OF JENIFER JOHNSON

DOIT is delivering technology solutions that enhance efficiency and effectiveness for state government.

3. DOIT is a state agency responsible for providing a wide range of information technology services to numerous agencies, boards, and commissions organized under the Governor of Illinois, as well as other state entities. 120 ILCS 1370.

A. **Need to Equip State Employees with Computers**

4. In its role as the information technology service provider for agencies, boards, and commissions under the Governor, DOIT regularly needs to supply personal computers, along with necessary accessories and support products (monitors, docking stations, and peripherals such as mice, keyboards, memory, hard drives, etc.), to state employees. This may occur at various times: including when new state employees are onboarded, as needed to fix or replace damaged or malfunctioning devices, or as part of scheduled rolling replacements of older devices that are currently in use.

5. DOIT deploys over 20,000 new computers to state employees each year, including an average of about 300 computers deployed each month to new hires. While DOIT generally tries to maintain some amount of inventory for these products on hand, we frequently must place additional orders for these products to keep up with state needs.

6. Under Illinois law, competitive source selection methods are often required for state contracts, such that many state contracts are awarded to vendors following a competitive solicitation, with the expectation that terms such as pricing will remain relatively stable across the life of the contract.

7. Many of the computer products we purchase are imported by our vendors from China and Mexico. The vendor the state relies on to provide most of its laptops had to scramble to shift some of its production to Vietnam in response to the tariff announcements.

8. DOIT has experienced difficulty in placing orders with its vendors on existing contracts for these products starting from late January of 2025, in expectation of tariffs and as the tariff announcements began. As a result, DOIT generally has not received new shipments of these

products during that time, and has now mostly (or, in many cases, entirely) exhausted its on-hand inventory of new products.

9. Due to these product shortages, DOIT has paused its ongoing, rolling efforts to replace older devices in use by state employees, despite there being over 16,000 such computers currently eligible for replacement. The continued use of outdated technology by state workers will result in slower processing times for some computer transactions, increased down time for support and repair of older systems, greater security risks including the possibility of becoming unsupported by vendors, and related impacts to Illinois residents and the state government services they rely upon.

10. As a result of these circumstances, it is already unavoidable that DOIT will soon need to begin deploying older computer devices to state workers to meet its onboarding needs for new hires, as well as to fix or replace any damaged or malfunctioning devices for current state employees. In addition to the risks of outdated technology, the impact of continued delays also means that DOIT technical teams will need to do double the work for all these deployments, as they will eventually need to replace any temporary devices deployed with new devices, when those eventually become available, and also wipe all temporary devices received back.

11. Other impacts include delays to ongoing efforts to deploy new operating system software to many state computers, ahead of the current deadline to complete the transition for all systems—currently set by the software vendor for October 2025. Apart from older computers eligible for replacement, numerous other devices require upgraded memory or hard drive capacity to support the transition to the new operating system, but those upgrades have now been delayed. This is because DOIT was unable to resolve tariff concerns with its vendors on existing contracts over product pricing during February and March, and as a result was unable to place any orders during that time. As a consequence of tariffs, these upgrades are expected to cost significantly more to provide once the component orders can eventually be filled. This transition needs to be done on a rolling basis to ensure sufficient support for state end users; the ongoing delays caused by the tariff announcements will place greater demands on our staff and make it less and less likely

that the state will be able to accomplish the transition in the remaining time. The longer the delays go on, the greater the pressure will become on DOIT's staff, and the less realistic it will be that the deadline can be met with available resources. To the extent the state ultimately cannot meet the software vendor's deadline, caused by these tariff-related delays in receiving needed computer equipment, DOIT expects significantly higher support costs for impacted devices.

12. Beginning in late January of this year, DOIT worked with vendors that provide some of these products to amend the contracts at issue to allow for the possibility of price increases due to extreme cost increases outside of the vendors' control. This was needed in part because those contracts would not allow vendors to separately bill the State for any applicable tariffs. DOIT then agreed to an amendment that would allow for 20% price increases on a key contract, in response to tariffs that had at that point been applied to China.

13. Despite DOIT agreeing to those changes, problems remained as contract amendments simply could not keep up with additional tariff announcements that have since occurred, as well as their unpredictability. As a result, DOIT has continued to experience difficulties in getting its vendors to issue quotes that would allow DOIT to place the orders it needs for these products.

14. Given those ongoing difficulties, DOIT has now pivoted to negotiate and put in place a new contract that will allow it more flexibility, with a goal of obtaining these products. DOIT has had to agree that orders placed against that contract will provide that any legally required tariffs will be passed on to and paid by DOIT and the State of Illinois, with the applicable tariffs listed as separate line items on the invoice the vendor will submit for payment in connection with each order placed. In the interest of quickly getting this contract in place to provide an alternate path forward, DOIT also has had to agree to forgo the inclusion of updated contract language on topics including security issues and protections for data loss and data breach issues—which would have required a longer period of negotiation.

15. However, ongoing uncertainty surrounding the tariffs—their actual magnitude and when they would be in effect—seriously hindered DOIT's ability to negotiate the initial attempts

at contract amendments, as well as this new contract. And as the negotiations dragged on, DOIT's stock of available computers and equipment dwindled.

16.  DOIT has faced similar problems in attempting to negotiate other contracts with technology vendors during this time period—which has included some vendors: (1) attempting to substantially increase quoted prices prior to contract execution, (2) walking away from contract negotiations, or (3) insisting on including unusual language to protect them against the application of tariffs (either by ensuring those costs are passed on to the state, or to excuse related non-performance by the vendor under the contract).

17.  DOIT's staff has also expended considerable effort and numerous work hours during the past several months in connection with these tariff-related challenges, in assessing, reacting, and responding to the unavailability and/or increased costs of needed products from our vendors, and in attempting to find new ways to nonetheless obtain those products in order to continue to provide our services to client agencies.

18.  The President's tariffs accordingly impose a financial harm to DOIT in multiple different ways.

**B.    Need to Budget for Expenditures and Charge-Back Costs to Client Agencies**

19.  DOIT utilizes a charge-back method when delivering its services to client agencies, billing them for the cost of the technology products and services DOIT deploys, which allows DOIT to pay its own bills to vendors.

20.  The President's repeated imposition, modification, suspension, and threatening of various tariffs has created substantial uncertainty regarding the expected cost of a wide range of goods and services, which impacts not only DOIT's ability to predict and budget for its own costs, but also its client agencies' ability to predict and budget for the invoices they will in turn receive from DOIT for the products and services they receive.

21.  The President's use of emergency powers to repeatedly impose and change tariffs thus harms DOIT's ability to accurately plan its budgets for the upcoming fiscal year and to pass on predictable costs to its client agencies.

**I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.**

**Executed on May 2, 2025, at Springfield, IL**

                                                                                     _____
                                                                                     Jenifer Johnson