IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| THE STATE OF OREGON, THE STATE OF ARIZONA, THE STATE OF COLORADO, THE STATE OF CONNECTICUT, THE STATE OF DELAWARE, THE STATE OF ILLINOIS, THE STATE OF MAINE, THE STATE OF MINNESOTA, THE STATE OF NEVADA, THE STATE OF NEW MEXICO, THE STATE OF NEW YORK, and THE STATE OF VERMONT, | Case No.  1:25-cv-00077-GSK-TMR-JAR<br><br>PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF SUMMARY JUDGMENT |
| Plaintiffs, | |
| v. | |
| DONALD J. TRUMP, in his capacity as President of the United States; DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; UNITED STATES CUSTOMS AND BORDER PROTECTION; PETER R. FLORES, in his official capacity as Acting Commissioner for U.S. Customs and Border Protection; and THE UNITED STATES, | |
| Defendants. | |

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................... 1

II. LEGAL AND FACTUAL BACKGROUND .......................................................... 1

III. LEGAL STANDARD ........................................................................................... 2

IV. ARGUMENT ......................................................................................................... 3

    A. The States are entitled to judgment as a matter of law. ................................. 3

    B. The Court should enter a permanent injunction and declaratory judgment. ................. 4

        1. The Court should permanently enjoin enforcement of the IEEPA Tariffs. ......................... 4

        2. The Court should set aside agency actions implementing the IEEPA Tariffs. ...................... 6

        3. The Court should declare the IEEPA Tariffs unlawful. .................................... 7

V. CONCLUSION ....................................................................................................... 8

CERTIFICATE OF COMPLIANCE WITH WORD LIMIT ..................................... 11

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Signature, Inc. v. United States*,
598 F.3d 816 (Fed. Cir. 2010)................................................................5

*Amoco Prod. Co. v. Vill. of Gambell, AK*,
480 U.S. 531 (1987)...........................................................................4

*Aspects Furniture Int'l, Inc. v. United States*,
42 F. 4th 1366 (Fed. Cir. 2022) ...........................................................2

*Atlas Powder Co. v. Ireco Chemicals*,
773 F.2d 1230 (Fed. Cir. 1985)..............................................................6

*California Steel Indus., Inc. v. United States*,
745 F. Supp. 3d 1287 (Ct. Int'l Trade 2024) ....................................5, 6

*Centech Grp., Inc. v. United States*,
554 F.3d 1029 (Fed. Cir. 2009)..............................................................5

*Gilda Indus., Inc. v. United States*,
622 F.3d 1358 (Fed. Cir. 2010)..............................................................6

*United States v. MacDonald*,
916 F.2d 766 (2d Cir. 1990) (en banc).....................................................6

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010)...........................................................................5

*Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*,
No. 25-239 (LLA), 2025 WL 368852 (D.D.C. Feb. 3, 2025)...................7

*Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*,
260 F.3d 1365 (Fed. Cir. 2001)..............................................................6

*Oman Fasteners, LLC v. United States*,
No. 22-00348, 2023 WL 2233642 (Ct. Int'l Trade Feb. 15, 2023) ...........5

*PGBA, LLC v. United States*,
389 F.3d 1219 (Fed. Cir. 2004)..............................................................7

*Solar Energy Indus. Assoc. v. United States*,
No. 20-03941, 2025 WL 1341888 (Ct. Int'l Trade May 8, 2025) ............5

Page ii

*Steffel v. Thompson,*
    415 U.S. 452 (1974) ...................................................................................................7

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) .......................................................................................................4

**Federal Statutes**

5 U.S.C. § 706(2) ...............................................................................................................6

28 U.S.C. § 1585 ................................................................................................................7

28 U.S.C. § 2201(a) ...........................................................................................................7

28 U.S.C. § 2643(c)(1) .......................................................................................................7

50 U.S.C. § 1701(a) .......................................................................................................1, 3

50 U.S.C. § 1702(a)(1)(B) ..................................................................................................1

Administrative Procedure Act.......................................................................................6, 7

International Emergency Economic Powers Act ................................................... *passim*

Trade Act of 1974, § 122 ...................................................................................................3

**Executive Orders**

Executive Order 14193, "Imposing Duties To Address the Flow of Illicit Drugs
    Across Our Northern Border," 90 Fed. Reg. 9113 ...................................................1

Executive Order 14194, "Imposing Duties To Address the Situation at Our
    Southern Border," 90 Fed. Reg. 9117.......................................................................1

Executive Order 14195, "Imposing Duties To Address the Synthetic Opioid
    Supply Chain in the People's Republic of China," 90 Fed. Reg. 9121 ................1, 2

Executive Order 14257, "Regulating Imports With a Reciprocal Tariff To Rectify
    Trade Practices That Contribute to Large and Persistent Annual United States
    Goods Trade Deficits," 90 Fed. Reg. 15041 .............................................................1

Executive Order 14266, 90 Fed. Reg. 15625 ....................................................................5

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**Other Authorities**

Ct. Int'l Trade R. 56(a) ...................................................................................................................2

Ct. Int'l Trade R. 56(c)(1)(A) ..........................................................................................................2

Ct. Int'l Trade R. 56.3 ......................................................................................................................1

Page iv

## I.   INTRODUCTION

As the plaintiff States explain in their Memorandum in support of their Motion for Preliminary Injunction, ECF No. 14 ("States' PI Memo"), the International Emergency Economic Powers Act (IEEPA) does not grant the President unlimited authority to impose tariffs on any country at any rate for any time interval he wants. Congress did not specifically grant the President any power to impose tariffs in IEEPA. And even if a President may impose *some* tariffs under IEEPA's authority to "regulate … importation," the President may do so only to "deal with" an "unusual and extraordinary threat." 50 U.S.C. §§ 1702(a)(1)(B), 1701(a). For either reason, the tariffs imposed by President Trump's multiple executive orders relying on IEEPA ("IEEPA Tariff Orders"[1]) must be set aside as a matter of law. Accordingly, the States are entitled to summary judgment.

## II.   LEGAL AND FACTUAL BACKGROUND

The legal and factual background of the IEEPA Tariff Orders is detailed in the States' PI Memo, as updated here. The facts material to the legality of the IEEPA Tariff Orders are largely drawn from the President's executive orders themselves and regardless are not genuinely in dispute. The States have also attached an annex of undisputed material facts to this brief, as required by Rule 56.3.

On May 12, 2025, the United States and the People's Republic of China ("China") jointly announced a reduction of the tariffs on imports from China under the Worldwide Tariff Order from 125 percent to 10 percent for 90 days beginning May 14. (*See* Second Declaration of Brian

---

[1] The States challenge Executive Order 14193, "Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border," 90 Fed. Reg. 9113 ("Canada Tariff Order"); Executive Order 14194, "Imposing Duties To Address the Situation at Our Southern Border," 90 Fed. Reg. 9117 ("Mexico Tariff Order"); Executive Order 14195, "Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China," 90 Fed. Reg. 9121 ("China Tariff Order"); and Executive Order 14257, "Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits," 90 Fed. Reg. 15041 ("Worldwide Tariff Order"), each as amended (collectively, "IEEPA Tariff Orders"), and the tariffs imposed pursuant to those orders ("IEEPA Tariffs").

Page 1 -   PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF SUMMARY JUDGMENT –
      *Oregon, et al. v. Trump, et al.*

Simmonds Marshall, Exs. H, I.) The underlying basis of both the emergency declaration (trade deficits) and the purported legal authority to impose tariffs (IEEPA) remain unchanged. That agreement also leaves unchanged the tariffs imposed under the China Tariff Order. Thus, for the 90-day period of the agreement, the additional tariffs imposed under IEEPA are expected to be 30 percent for most imports from China.

Meanwhile, on May 7, the Chair of the Federal Reserve reported on the import of the Administration's tariff policy actions on the U.S. economy: "If the large increases in tariffs that have been announced are sustained, they are likely to generate a rise in inflation, a slowdown in economic growth, and an increase in unemployment." (*See* Second Marshall Decl., Ex. J at 3.) He also reported that "[n]ear-term measures of inflation expectations have moved up, as reflected in both market- and survey-based measures." (*Id.* at 2.) In addition, he said that "[s]urveys of households and businesses … report a sharp decline in sentiment and elevated uncertainty about the economic outlook, largely reflecting trade policy concerns." (*Id.* at 1.)

## III.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." U.S. Ct. Int'l Trade R. 56(a). "A nonmoving party establishes that there is a genuine dispute of material fact only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aspects Furniture Int'l, Inc. v. United States*, 42 F. 4th 1366, 1369 (Fed. Cir. 2022) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986)). "A party asserting that a fact cannot be … genuinely disputed must support the assertion by … citing to particular parts of materials in the record, including … documents … or declarations …." U.S. Ct. Int'l Trade R. 56(c)(1)(A).

Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# IV.    ARGUMENT

**A.    The States are entitled to judgment as a matter of law.**

The core issues in this case are legal, not factual. The material facts about the tariffs are not in genuine dispute. The dispute is whether the President has the legal authority to impose those tariffs. As the plaintiff States explained in detail in their motion for a preliminary injunction, IEEPA does not authorize the President to impose any tariffs, as the text, context, and history show. And even if IEEPA granted a President limited authority to impose some tariffs or duties, it would not grant authority to impose tariffs as sweeping or based on the President's whim.

First, the text, context, and history of IEEPA do not show a clear intent to authorize the imposition of tariffs. IEEPA does not specifically grant the President the power to impose tariffs. (States' PI Memo at 15–17.) If Congress had intended to create that specific Presidential authority—as it has in numerous other tariff statutes—it would have done so expressly. And IEEPA's history shows that Congress intended to limit Presidential emergency economic powers and leave for other legislation a President's authority to respond to specific trade problems. (*See* States' PI Memo at 16–17 (describing how Congress intended to create Presidential powers more limited in scope than predecessor statute and passed Section 122 of the Trade Act of 1974 to create power to impose limited duties in response to balance-of-payment problems).) At the very least, if Congress had intended to create unbounded Presidential authority to impose any tariff on any country, it would have expressed that intent clearly. The lack of any clear intent shows that President Trump's reading of IEEPA must be wrong. (*See* States' PI Memo at 18–19.)

Second, even if IEEPA otherwise authorized tariffs to "deal with" unusual and extraordinary threats, 50 U.S.C. § 1701(a), the IEEPA Tariff Orders do not satisfy those requirements. To begin, President Trump has failed to identify "an unusual and extraordinary" threat for the Worldwide IEEPA Tariffs. (*See* States' PI Memo at 22–23.) Longstanding,

Page 3 -    PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF SUMMARY JUDGMENT –
*Oregon, et al. v. Trump, et al.*

Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

persistent trade deficits cannot be "unusual" or "extraordinary." Nor does the imposition of arbitrary tariffs on every single U.S. trading partner "deal with" that threat as IEEPA requires. (*See* States' PI Memo at 23–25). Similarly, President Trump's IEEPA tariffs on Canada, Mexico, and China do not "deal with" the identified threat of curtailing drug trafficking or addressing the fentanyl crisis. (*See* States' PI Memo at 25–26.) *United States v. Yoshida Int'l, Inc.*, confirms that conclusion in holding that, if a President has any authority to impose tariffs as an emergency economic power, that authority is limited to temporary duty surcharges that do not exceed congressionally approved tariff rates. *See* 526 F.2d 560, 577, 583 (C.C.P.A. 1975) (observing that "[t]he declaration of a national emergency is not a talisman enabling the President to rewrite the tariff schedules"). President Trump's IEEPA Tariffs are based on a claim of power that IEEPA does not support and no other President has exercised.

**B.      The Court should enter a permanent injunction and declaratory judgment.**

Because there is no genuine dispute about the material facts, this Court should grant summary judgment to the plaintiff States on all counts of the complaint and award their requested remedies.

**1.      The Court should permanently enjoin enforcement of the IEEPA Tariffs.**

The Court should enter an injunction, permanently barring the United States, the U.S. Department of Homeland Security and its Secretary Kristi Noem, U.S. Customs and Border Protection and its Acting Commissioner Peter R. Flores, and others in active concert or participation with them, from implementing the IEEPA Tariffs.

The standards for preliminary and permanent injunctions are "essentially the same." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987); *accord Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008). The only distinction is that, for a permanent injunction, the plaintiff must establish "actual success" on the merits, as opposed to a likelihood of success. *Amoco Prod. Co.*, 480 U.S. at 546 n.12. Thus, in deciding whether to issue a

Page 4 -   PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF SUMMARY JUDGMENT –
         *Oregon, et al. v. Trump, et al.*

permanent injunction, "the court must consider whether (1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010) (considering whether "remedies available at law, such as monetary damages, are inadequate to compensate for that injury").

The States have demonstrated that they are entitled to judgment as a matter of law, thereby satisfying the first criteria for a permanent injunction. *See Centech Grp., Inc.*, 554 F.3d at 1037. And, for the reasons set forth in the States' PI Memo, the remaining criteria militate in favor of a permanent injunction. The States have suffered, and will continue to suffer, irreparable harm absent an injunction, (*see* States' PI Memo at 8–14, 29–26), and "[t]he public interest is served by ensuring that governmental bodies comply with the law, and interpret and apply trade statutes uniformly and fairly," (*see* States' PI Memo at 36–37). *Am. Signature, Inc. v. United States*, 598 F.3d 816, 830 (Fed. Cir. 2010); *California Steel Indus., Inc. v. United States*, 745 F. Supp. 3d 1287, 1304 (Ct. Int'l Trade 2024) (holding that "the government has no legitimate interest in collecting duties to which it has no legal claim" (cleaned up; internal quotations omitted)); *Oman Fasteners, LLC v. United States*, No. 22-00348, 2023 WL 2233642, at *13 (Ct. Int'l Trade Feb. 15, 2023), *aff'd*, 125 F. 4th 1068 (Fed. Cir. 2025) (granting permanent injunction and finding that "government ha[d] no legitimate interest" in collecting duties deemed unlawful); *see also Solar Energy Indus. Assoc. v. United States*, No. 20-03941, 2025 WL 1341888, at *9 (Ct. Int'l Trade May 8, 2025) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) ("The purpose of an injunction is to prevent future violations[.]").

Any disadvantage the federal government may suffer in ongoing trade negotiations, *see* Executive Order 14266, 90 Fed. Reg. 15625 (Apr. 9, 2025), is the direct result of the President's

Page 5 -   PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF SUMMARY JUDGMENT –
          *Oregon, et al. v. Trump, et al.*

Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

unlawful actions and cannot justify denying relief here. *See, e.g.*, *Solar Energy Indus. Assoc.*, No. 20-03941, 2025 WL 1341888, at \*8 (denying federal government equitable relief where the government's illegal conduct "caused the very harm from which" it sought relief); *Atlas Powder Co. v. Ireco Chemicals*, 773 F.2d 1230, 1231 (Fed. Cir. 1985) (rejecting request in patent case to "maintain the status quo by allowing" continuance of acts that were "probably" unlawful); *California Steel Indus., Inc.*, 745 F. Supp. 3d at 1304 (holding that governments have "no legitimate interest" in collecting unlawful duties); *see also United States v. MacDonald*, 916 F.2d 766, 772 (2d Cir. 1990) (en banc) ("[L]aw enforcement agents may not create their own exigencies 'through illegal conduct.'") (quoting *United States v. Allard*, 634 F.2d 1182, 1187 (9th Cir. 1980)). To conclude otherwise would eviscerate any incentive to comply with the law.

   2.    **The Court should set aside agency actions implementing the IEEPA Tariffs.**

   In evaluating agency action, this Court's "standard of review is provided by the Administrative Procedure Act ("APA")…." *Gilda Indus., Inc. v. United States*, 622 F.3d 1358, 1363 (Fed. Cir. 2010) (citing 28 U.S.C. § 2640(e) ("In any civil action not specified in this section, the Court of International Trade shall review the matter as provided in section 706 of title 5.")). Under that standard, the Court will "hold unlawful and set aside agency action … found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law…." 5 U.S.C. § 706(2).

   Although "[a]n inadequately supported rule ... need not necessarily be vacated," here, "'the seriousness of the order's deficiencies'" counsel in favor of vacatur. *Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 260 F.3d 1365, 1380 (Fed. Cir. 2001) (quoting *Allied–Signal, Inc. v. United States Nuclear Regulatory Comm'n*, 988 F.2d 146, 150, 151 (D.C. Cir. 1993) & *A.L. Pharma, Inc. v. Shalala,* 62 F.3d 1484, 1492 (D.C. Cir. 1995)). Every agency action to implement the IEEPA Tariffs stems from the arrogation of executive authority where no statutory authority exists in the first instance, and the President's emergency declaration does

Page 6 -    PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF SUMMARY JUDGMENT –
       *Oregon, et al. v. Trump, et al.*

not meet the statutory predicates for the exercise of emergency powers at all. Thus, this is not an instance where an agency "can provide a reasonable explanation for its decision" on remand to correct an APA violation. *Id.* Insofar as the agency cannot provide a reasonable explanation for its actions implementing the IEEPA Tariff Orders, it has violated the APA. *See, e.g.*, *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, No. 25-239 (LLA), 2025 WL 368852, at *11 (D.D.C. Feb. 3, 2025) ("[F]urthering the President's wishes cannot be a blank check for [an agency] to do as it pleases. The APA requires a rational connection between the facts, the agency's rationale, and the ultimate decision.").

For these reasons, U.S. Customs and Border Protection's agency actions to implement the IEEPA Tariffs, including the Cargo Systems Messaging Service instructions to importers, should be vacated as arbitrary and capricious and not in accordance with law.

### 3. The Court should declare the IEEPA Tariffs unlawful.

The Court should also grant the States declaratory relief. *See* 28 U.S.C. § 2643(c)(1) (providing this Court generally may "order any other form of relief that is appropriate in a civil action, including, but not limited to, declaratory judgments"); *see also* 28 U.S.C. §§ 1585, 2201(a) (authority of district courts to issue declaratory relief). Indeed, to merit declaratory relief, the States need only show that the IEEPA tariffs are unlawful—they do not need to show irreparable injury. *See Steffel v. Thompson*, 415 U.S. 452, 471–72 (1974) ("[T]he Court of Appeals was in error when it ruled that a failure to demonstrate irreparable injury —a traditional prerequisite to injunctive relief, having no equivalent in the law of declaratory judgments— precluded the granting of declaratory relief.") (internal citations omitted); *PGBA, LLC v. United States*, 389 F.3d 1219, 1228 n.6 (Fed. Cir. 2004) ("[I]rreparable injury must be shown in a suit for an injunction, but not in an action for declaratory relief.") (quoting *Perez v. Ledesma*, 401 U.S. 82, 123 (1971)). The States have shown that the IEEPA Tariffs are unlawful, and the Court should so declare.

Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## V.     CONCLUSION

The Court should grant summary judgment to the States on all counts of their complaint and enter judgment in their favor (i) entering a permanent injunction against the United States, its agencies, and its officers implementing the IEEPA tariffs, (ii) setting aside the agency actions implementing the IEEPA Tariffs, and (iii) declaring the IEEPA Tariff Orders unlawful.

DATED: May 13, 2025

Respectfully submitted,

**DAN RAYFIELD**
Attorney General
State of Oregon

By: */s/ Brian Simmonds Marshall*
Benjamin Gutman
Solicitor General
Dustin Buehler
Special Counsel
Brian Simmonds Marshall
Christopher A. Perdue*
Leigh Salmon
Nina R. Englander*
Senior Assistant Attorneys General
YoungWoo Joh
Alexander C. Jones*
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Brian.S.Marshall@doj.oregon.gov
Chris.Perdue@doj.oregon.gov
Nina.Englander@doj.oregon.gov
YoungWoo.Joh@doj.oregon.gov
Alex.Jones@doj.oregon.gov

Attorneys for the State of Oregon

**KRISTIN K. MAYES**
Attorney General
State of Arizona

By: */s/ Syreeta A. Tyrell*
Joshua D. Bendor**
Solicitor General
Syreeta A. Tyrell
Senior Litigation Counsel
2005 North Central Avenue
Phoenix, Arizona 85004
Phone: (602) 542-8333
Joshua.Bendor@azag.gov
Syreeta.Tyrell@azag.gov
ACL@azag.gov

Attorneys for the State of Arizona

**KEITH ELLISON**
Attorney General
State of Minnesota

By: */s/ Pete Farrell*
Peter J. Farrell
Deputy Solicitor General
445 Minnesota Street, Suite 600
St. Paul, Minnesota, 55101
(651) 757-1424
Peter.Farrell@ag.state.mn.us

Attorneys for the State of Minnesota

Page 8 -   PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF SUMMARY JUDGMENT –
          *Oregon, et al. v. Trump, et al.*

Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**PHILIP J. WEISER**
Attorney General
State of Colorado

By: */s/ Sarah H. Weiss*
Sarah H. Weiss
*Senior Assistant Attorney General*
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
Sarah.Weiss@coag.gov

Attorneys for the State of Colorado

**WILLIAM TONG**
Attorney General
State of Connecticut

By: */s/ Michael K. Skold*
Michael K. Skold
Solicitor General
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020
Michael.skold@ct.gov

Attorneys for the State of Connecticut

**KATHLEEN JENNINGS**
Attorney General
State of Delaware

By: */s/ Ian R. Liston*
Ian R. Liston*
Director of Impact Litigation
Vanessa L. Kassab*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

Attorneys for the State of Delaware

**AARON D. FORD**
Attorney General
State of Nevada

By: */s/ Heidi Parry Stern*
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov

Attorneys for the State of Nevada

**RAÚL TORREZ**
Attorney General
State of New Mexico

By: */s/ James W. Grayson*
James W. Grayson*
Chief Deputy Attorney General
Amy Senier
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508
P.O. Drawer 1508
Santa Fe, NM 87504-1508
(505) 490-4060
jgrayson@nmdoj.gov
asenier@nmdoj.gov

Attorneys for the State of New Mexico

**LETITIA JAMES**
Attorney General
State of New York

By: */s/ Rabia Muqaddam*
Rabia Muqaddam
Special Counsel for Federal Initiatives
(929) 638-0447
Mark Ladov
Special Counsel
Office: (212) 416-8240
Cell: (347) 814-9434
28 Liberty St.
New York, NY 10005
rabia.muqaddam@ag.ny.gov
mark.ladov@ag.ny.gov

Attorneys for the State of New York

Page 9 -   PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF SUMMARY JUDGMENT –
          *Oregon, et al. v. Trump, et al.*

**KWAME RAOUL**
Attorney General
State of Illinois

By: */s/ Gretchen Helfrich*
Cara Hendrickson
Assistant Chief Deputy Attorney General
Gretchen Helfrich
Deputy Chief, Special Litigation Bureau
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, IL 60603
Tel. (312) 814-3000
Cara.Hendrickson@ilag.gov
Gretchen.helfrich@ilag.gov

Attorneys for the State of Illinois


**CHARITY R. CLARK**
Attorney General
State of Vermont

By: */s/ Ryan P. Kane*
Ryan P. Kane
Deputy Solicitor General
109 State Street
Montpelier, VT 05609
(802) 828-2153
Ryan.kane@vermont.gov

Attorneys for the State of Vermont


**AARON M. FREY**
Attorney General
State of Maine

By: */s/ Vivian A. Mikhail*
Vivian A. Mikhail
Deputy Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8800
Vivian.mikhail@maine.gov

Attorneys for the State of Maine

* *Admission application forthcoming*

** *Admission application pending*


Page 10 -  PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF SUMMARY JUDGMENT –
          *Oregon, et al. v. Trump, et al.*

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

Pursuant to the Court's order (ECF 18), I certify that this supplemental brief, including headings, footnotes, and quotations (but excluding the table of contents, table of authorities, counsel's signature blocks, and this certificate), does not exceed 10,000 words.

*/s/ Brian Simmonds Marshall*
Brian Simmonds Marshall
Senior Assistant Attorneys General
Oregon Department of Justice

Of Attorneys for the State of Oregon

Page 11 -  PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF SUMMARY JUDGMENT –
     *Oregon, et al. v. Trump, et al.*