IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| THE STATE OF OREGON, THE STATE OF ARIZONA, THE STATE OF COLORADO, THE STATE OF CONNECTICUT, THE STATE OF DELAWARE, THE STATE OF ILLINOIS, THE STATE OF MAINE, THE STATE OF MINNESOTA, THE STATE OF NEVADA, THE STATE OF NEW MEXICO, THE STATE OF NEW YORK, and THE STATE OF VERMONT, | Case No. 1:25-cv-00077-GSK-TMR-JAR |
| Plaintiffs, | |
| v. | |
| DONALD J. TRUMP, in his capacity as President of the United States; DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; UNITED STATES CUSTOMS AND BORDER PROTECTION; PETE R. FLORES, in his official capacity as Acting Commissioner for U.S. Customs and Border Protection; and THE UNITED STATES, | |
| Defendants. | |

**JOINT BRIEF OF WASHINGTON STATE AMICI CURIAE
IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
AND SUMMARY JUDGMENT**

Steven W. Fogg, WSBA No. 23528
Kathryn C. M. Joy, WSBA No. 60056

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Ph: (206) 625-8600
Fax: (206) 625-0900
sfogg@corrcronin.com
kjoy@corrcronin.com

*Counsel to the Washington State Amici*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

INTERESTS OF AMICI CURIAE.............................................................................................. 1

INTRODUCTION ....................................................................................................................... 2

LAW & ARGUMENT................................................................................................................. 3

       I.      Unprecedented Tariffs Harm the Governor of Washington, the State Economy, Major Industries, Workers, and Consumers ........................................................... 3

       II.    President Trump Lacks Legal Authority to Impose Tariffs Under IEEPA ............ 7

CONCLUSION.......................................................................................................................... 10

CERTIFICATE OF COMPLIANCE ......................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Almendarez-Torres v. United States*,
523 U.S. 224 (1998)....................................................................................................9

*Brushaber v. Union Pac. R.R. Co.*,
240 U.S. 1 (1916)........................................................................................................8

*McDonnell v. United States*,
579 U.S. 550 (2016)....................................................................................................9

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952)....................................................................................................8

**Federal Statutes**

International Emergency Economic Powers Act of 1977...................................... *passim*

Trade Act of 1974, 19 U.S.C. § 2132(a)(1) ...............................................................8

Trade Act of 1974, 19 U.S.C. § 2251 ........................................................................8

Trade Expansion Act of 1962, 19 U.S.C. § 1862(b)–(c) .............................................8

**Constitutional Provisions**

U.S. CONST. Article I ...........................................................................................2, 8, 9

**Other Authorities**

Tom Campbell, *Presidential Authority to Impose Tariffs*, 83 LA. L. REV. 595, 606
(2023)........................................................................................................................10

**INTERESTS OF AMICI CURIAE**

Amici curiae are a coalition of state and local officials, state legislators, labor unions, and business interests: Governor Bob Ferguson; Treasurer Mike Pellicciotti; State Senate Majority Leader Jamie Pedersen, Deputy Majority Leader Manka Dhingra, and Senators Noel Frame, Marko Liias, June Robinson, Jesse Salomon, Derek Stanford, Javier Valdez; State Representatives Joe Fitzgibbon and Chris Stearns; Seattle Mayor Bruce Harrell; Spokane Mayor Lisa Jo Brown; the Washington Economic Development Association, a trade association focused on economic development in Washington state whose members include economic development organizations, cities, counties, ports, tribes, businesses, education and community-based organizations that prioritize economic development; the International Association of Machinists and Aerospace Workers District 751; Iron Workers Local Union 86; Sheet Metal, Air, Rail & Transportation (SMART) Northwest Regional Council Local 66; Society of Professional Engineering Employees in Aerospace (SPEEA), IFPTE Local 2001; Teamsters Local 117; the Greater Everett Chamber of Commerce; Susan Yirku, Executive Director, Pacific County Economic Development Council; Man Wang, Executive Director, Washington State China Relations Council; and North Cascades Builders Supply (collectively, the "Washington State Amici"). The Washington State Amici represent a wide variety of public and private interests within the State of Washington that will be harmed if President Trump is not prohibited from imposing the unlawful tariffs at issue in this case.

As a leader in global and national trade, Washington bears an inordinate share of the costs associated with President Trump's tariff regime. These costs directly impact Governor Ferguson, whose ability to respond to the State's emergencies and enact his policy goals and the prerogatives of the State's Legislature are frustrated by the economic impact of President Trump's tariffs. Likewise, the harmful impacts of the Trump Administration's tariffs threaten Treasurer Pellicciotti's ability to efficiently manage the public fisc by negatively impacting Washington's revenues, its credit rating, the national and international financial markets with which Washington

1

is constantly engaged, and other economic factors. The constraints on trade in Washington imposed by the tariffs in turn increase economic pressure on key state industries, lead to job losses and wage cuts, disrupt supply chains, and reduce market competition. All of these consequences directly harm the Washington State Amici.

The Washington State Amici submit this brief to emphasize the irreparable harm caused across a variety of sectors in Washington state by the President's unlawful, arbitrary, and ever-changing tariff policy, and in support of Plaintiffs' motion for a preliminary injunction and summary judgment.

## INTRODUCTION

President Trump initiated an unprecedented tariff regime by relying on the International Economic Emergency Powers Act ("IEEPA") and a purported national emergency arising from persistent trade deficits. No President has previously relied on IEEPA to impose tariffs in the nearly half a century since its enactment, and for good reason. The President has no authority to arbitrarily impose tariffs like those at issue here, and the text and history of IEEPA confirm that the President cannot impose such tariffs under that law. The United States Constitution vests the authority to impose tariffs in Congress. *See* U.S. CONST. art. I, § 8, cl. 1. While Congress has enacted numerous statutes delegating tariff authority to the President that expressly authorize imposition of tariffs, it has also placed limitations and conditions on that delegated authority, including following required process and notice. Rather than comply with the process and notice requirements set forth in those statutes, President Trump issued over a dozen executive orders invoking IEEPA as their sole legal basis, claiming that IEEPA grants him unilateral authority to impose unprecedented tariffs. This is incorrect, for all the reasons explained by the Plaintiffs in this case.

The uncertainty and upheaval caused by the President's unilateral and arbitrary misuse of executive power threatens immediate and existential harm to economic stability and to numerous industries, workers, consumers, and commerce within the State of Washington. The Washington State Amici urge the Court to grant summary judgment for Plaintiffs and preliminarily and

2

permanently enjoin enforcement of the President's unlawful tariffs, set aside any agency action implementing the tariffs, and declare the tariffs unlawful.

## LAW & ARGUMENT

**I.    Unprecedented Tariffs Harm the Governor of Washington, the State Economy, Major Industries, Workers, and Consumers**

The impacts of President Trump's tariffs in recent weeks have already been felt by countries, businesses, and individuals around the globe. In particular, the economic impact of President Trump's April 2, 2025, announcement of the Worldwide Tariff Order and reciprocal tariffs was historic and unprecedented. In the two days following his announcement, the U.S. stock market lost a record $6.6 trillion, *the largest two-day loss in its history*. These impacts are disproportionately felt within Washington state, which is one of the most trade-dependent states in the nation. If allowed to remain in effect, the President's tariffs will continue to wreak havoc on Washington-based interests by disrupting established supply chains, forcing businesses and consumers to pay more for goods, equipment, and services, and interfering with the Governor's ability to shape and implement a state budget and pursue state policy priorities amid the significant uncertainty, chaos, and adverse economic conditions caused by the tariffs.

Washington is the ninth-largest state exporter of goods in the country, and its economy stands to suffer unique and disproportionate harm from President Trump's reckless and unprecedented tariffs. Washington businesses are experiencing severe disruptions, including halting plans to hire or expand due to increased uncertainty, the loss of existing and new market opportunities for export goods, and higher prices for necessary inputs that depress demand and threaten revenues. Agriculture is one such industry that will be hit particularly hard by the President's tariff regime. Washington is the top United States producer of apples, blueberries, hops, pears, spearmint oil, and sweet cherries—all of which risk losing vital export markets due to retaliatory tariffs from key trading partners like Canada and Mexico. As Washington's largest and fourth-largest agricultural export markets, respectively, any retaliatory tariffs imposed from

Canada and Mexico could have devastating short- and long-term impacts on Washington's food and agriculture exporters due to trade disruptions and loss of hard-earned market share.

In 2024 alone, Washington exported $57.8 billion of goods to the world, accounting for 7.2 percent of the state's gross domestic product in 2024. As of 2022, Washington goods exports supported an estimated 160,000 jobs across the state, almost 18 percent above the national average. The impact of tariffs imposed during the first Trump Administration foreshadows the harmful impact of the President's current tariff regime. In 2018, following the Trump Administration's imposition of tariffs on steel and aluminum imports from major trading partners, Mexico imposed retaliatory tariffs on a range of agricultural goods, including a 20 percent tariff on apples and potatoes. While those tariffs were in place, Washington apple exports fell by more than 29 percent, while potato exports to Mexico dropped by 21 percent.

China, Canada, and Mexico, three countries specifically targeted by President Trump's current tariff regime, are three of Washington's top four trading partners. In 2024, the state exported $12 billion in goods to China, the state's largest market, representing 21 percent of Washington's total goods exports. In the same year, Washington exported $7.9 billion in goods to Canada and $4.3 billion to Mexico, representing 19 and 10 percent of Washington's total goods exports for the year, respectively. In 2023, Washington imported $19.9 billion in goods from Canada, including crucial manufacturing inputs like oil, gas, lumber, and electrical power.

The ripple effects of the tariffs will likely extend far beyond direct manufacturing costs. Higher prices for raw materials and components would force Washington state manufacturers to either absorb the costs, potentially reducing profitability and investment, or pass them on to consumers, which could reduce demand for their products. Aside from the direct impact of higher input costs, the uncertainty surrounding the duration of the tariffs is likely to cause significant drag on Washington's manufacturing sector, with local companies struggling to make long-term production and supply chain decisions that would ultimately reduce investment in manufacturing capacity. Retaliatory tariffs from other countries are particularly burdensome to smaller

4

manufacturers that operate on tighter margins and have less flexibility to absorb or pass on increased costs. Of the over 12,000 companies that export goods from Washington, nine out of ten are small and medium-sized businesses.

Additionally, Canada, Mexico, and China together account for nearly half of Washington's imports, totaling to $30 billion in 2024. Due to the nearly universal duty-free treatment under the U.S.-Mexico-Canada Agreement, Washington businesses paid just $16 million in tariffs on $19 billion in imports from Mexico and Canada in 2024—an effective tariff rate of just 0.08 percent. By contrast, Washington companies paid $1.3 billion in tariffs on imports from China—more than any other country—because tariffs averaged 11.9 percent that year. The tariffs now imposed on Canada in particular threaten to destabilize Washington's agricultural trade. In 2023, Washington imported $2 billion in agricultural products from Canada. Many of these products are used as ingredients in Washington-made goods and are integral to the state's food-processing economy. The livestock industries of Canada and Washington are also closely interconnected, with a high volume of Canadian cattle processed in Washington each year. Increased import costs due to the President's tariffs or any retaliatory tariffs would increase prices on the resulting Washington-made products, impacting those sold domestically as well as exported. Exports would then decrease, as trading partners would source from competitor countries that can offer lower prices.

With such robust trade relationships at stake, the cost of President Trump's new tariffs will have major consequences for Washington businesses and consumers. Altogether, the new tariffs could cost Washington companies an estimated $18 to $21 billion in extra tariffs, including $4.2 billion from the Tariff Orders purporting to address fentanyl. For context, Washington companies paid just $2 billion in total tariffs on all imports from all countries in 2024, meaning that the new tariffs could increase the state's tariff burden by a factor of ten. While the precise amount of estimated damage attributable to the tariffs may fluctuate as the President announces, imposes, pauses, rescinds, or reimposes tariffs at his whim, the unlawful tariffs—and the uncertainty

Washington businesses and consumers must contend with amid dramatic shifts in the President's tariff policy—inevitably cause tremendous harm across the state.

Further, because of Washington's outsized economic footprint, it is subject to outsized impacts from President Trump's recent tariffs. Washington state businesses and consumers engage in considerable spending across the global market. The goods and services they transact in will inevitably or have already become more expensive as a direct result of President Trump's IEEPA Tariff Orders, drastically impacting the state's economy and budget. One local example of the potential impact of tariffs is Schweitzer Engineering Laboratories (SEL), a company headquartered in Pullman, Washington, that makes electricity metering, controls, and automation. SEL imports over $100 million in components and products from Mexico and $3.2 million in components from Canada each year. The only way for SEL to respond to tariffs is to increase prices for its customers. This is just one example of how upstream costs or capital expenses for a business may lead to increased inflation.

Retaliatory tariffs imposed by other countries in response to President Trump's tariffs are also impacting Washington's economy in unique and particularized ways. For example, Washington is the country's 17th largest agricultural exporting state, shipping over $3.5 billion in domestic agricultural exports abroad in 2023. Washington products that are especially reliant on global trade include wheat (up to 90 percent of the crop is exported each year), potatoes (up to 70 percent is exported in the form of French fries), and tree fruit (approximately 30 percent of apples and 25 percent of cherries are exported each year). The existing and potential additional imposition of high retaliatory tariffs by countries that import produce from Washington reduces the competitiveness of Washington products in that country's market—depressing export demand for the product, reducing revenues for producers and exporters, and weakening or even eliminating Washington companies' access to those markets.

President Trump's tariffs also reduce revenue for Washington companies of all sizes due to depressed domestic demand, loss of market competitiveness for exports, and reduced economic

activity from tourism. The projected financial impact of this trend is significantly deleterious to employment in the state as well as to the state budget itself, which depends on revenues that may dry up as the tariffs' impacts damage Washington's businesses and state economy.

For these reasons, the tariffs impede Governor Ferguson's policy goals and his ability to effectuate the State Legislature's priorities. As the chief executive officer of the State of Washington, Governor Ferguson plays a critical role in setting statewide policy, enacting and implementing the state budget, responding to statewide emergencies, and enforcing state law. As such, adverse impacts on Washington's economy caused by the unlawful tariffs are a paramount concern for the Governor and directly and adversely impact his ability to respond to emergencies and enact his policy goals and the prerogatives of the Washington Legislature. Because the tariffs stymie Washington's economy and roil international financial markets, Treasurer Pellicotti's ability to manage its state treasury would likewise be impeded.

All told, President Trump's tariffs will transform the economic situation in Washington state and directly impact Governor Ferguson's ability to deliver on his policy goals for all Washingtonians. The irreparable harm created by the President Trump's tariffs does not just impact the Plaintiffs. It has already been felt by Washington's economy, and in turn, by its Governor, its Treasurer, lawmakers, local government leaders, labor unions and their members, and business interests and consumers across the state.

## II. President Trump Lacks Legal Authority to Impose Tariffs Under IEEPA

As the Plaintiff States in this case argue, the President lacks authority to impose and modify tariffs under the International Emergency Economic Powers Act of 1977 ("IEEPA"). Any of Plaintiffs' arguments based on statutory interpretation, the Constitution's delegation of powers to specific branches of government, or the constitutional limits on the President's authority, is sufficient on its own to grant a preliminary injunction and summary judgment to Plaintiffs. Rather than reiterate Plaintiffs' arguments, the Washington State Amici offer several brief points of emphasis.

Under our constitutional system of checks and balances, "[t]he President's power, if any, to issue [an] order must stem either from an act of Congress or from the Constitution itself." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). The Constitution does not vest in the President authority to impose tariffs. Rather, it expressly vests that authority in Congress, not the President. U.S. CONST. art. I, § 8, cl. 1 ("The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States …"). Congress's power in this area is exhaustive. *Brushaber v. Union Pac. R.R. Co.*, 240 U.S. 1, 12 (1916). Because the Constitution does not grant the President any authority to impose tariffs, such authority must come from an act of Congress—otherwise, the President's actions are beyond what the law allows.

Consistent with its constitutionally vested power, Congress has enacted many laws establishing tariffs and, under prescribed circumstances, authorizing the President to raise duties (commonly referred to as tariffs) in limited specific circumstances. *See, e.g.*, Trade Act of 1974, 19 U.S.C. § 2132(a)(1) (President may impose a "temporary import surcharge … in the form of duties" to "deal with large and serious United States balance-of-payments deficits"); Trade Act of 1974, 19 U.S.C. § 2251 (President may "take all appropriate and feasible action" to protect domestic industries); Trade Expansion Act of 1962, 19 U.S.C. § 1862(b)–(c) (President may institute tariffs to address threats to national security).

Here, the statute on which the President relies as the sole authority for imposing the tariffs at issue—IEEPA—says nothing about tariffs. Rather, IEEPA authorizes the President to "deal with any unusual and extraordinary threat … if the President declares a national emergency with respect to such threat." 50 U.S.C. § 1701(a). Only in a declared national emergency does IEEPA permit the President, "by means of instructions, licenses, or otherwise," to "investigate, regulate, or prohibit … any transactions in foreign exchange" and "regulate … any … importation or

exportation of … any property in which any foreign country or a national thereof has any interest by any person." 50 U.S.C. § 1702(a)(1)(A), (B).

IEEPA does not authorize the President to impose tariffs. Tariffs on products are not currency exchanges or banking transactions, so section 1702(a)(1)(A) should not apply. And subsection (a)(1)(B), which gives the President the power to "regulate," should not authorize the challenged tariffs either because the regulation of imports is not synonymous with and does not include the power to impose tariffs on imports. Section 1702(a)(1)(B), which permits the President to "investigate, block[] during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit" transactions involving property of a foreign country or national, uses the language of embargoes and sanctions, which is what IEEPA has consistently been used for. Interpreting "regulate" as used in section 1702(a)(1)(B) to permit the President to impose tariffs would be flatly incongruous with the context in which it appears. *See McDonnell v. United States*, 579 U.S. 550, 569 (2016) ("Under the familiar interpretive canon noscitur a sociis, 'a word is known by the company it keeps.'") (citation omitted).

It is also noteworthy that IEEPA, in § 1702(a)(1)(B), envisions the President "regulat[ing]" both imports and exports under its authority. Because the export clause of the Constitution, art. I, § 9, cl. 5, expressly *prohibits* imposing duties on exports, interpreting "regulate" to mean "impose a duty" would create a facial, and unnecessary, tension with the Constitution. The more natural reading of the statute is that Congress never intended it to authorize the President to impose tariffs. *Almendarez-Torres v. United States*, 523 U.S. 224, 237 (1998) (statutes "must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score") (internal quotations omitted). Furthermore, even assuming—despite the constitutional-avoidance canon of statutory construction—that IEEPA does authorize some tariffs when there is an "*unusual* and *extraordinary* threat," 50 U.S.C. § 1701 (emphasis added), President Trump's unilateral imposition of his tariffs invoking IEEPA are aberrations that fly in the face of history and the legislative text.

Per the statute's plain language, IEEPA is intended to deal with emergent and distinct threats. It is not a mechanism for influencing or implementing broad tax and economic policy. And again, the text of IEEPA does not mention tariffs at all. Instead, the powers given to the president under IEEPA strongly suggest quantitative restrictions. For instance, IEEPA specifically excludes from the President's authority regulation of "personal communication[s]," "donations … to relieve human suffering," the transfer of "informational materials," and "transactions ordinarily incident to travel," such as baggage. 50 U.S.C. § 1702(b)(1)–(4). None of these activities is logically amenable to a tariff, because they are more appropriately the subject of qualitative restrictions. *See, e.g.*, Tom Campbell, *Presidential Authority to Impose Tariffs*, 83 LA. L. REV. 595, 606 (2023). Thus, while IEEPA may in theory authorize the President to regulate or prohibit the importation or exportation of certain transactions or property, it does not authorize the President to levy tariffs on all imports from all nations. *See id.* at 599–606.

Because IEEPA provides no "clear" congressional authorization for President Trump's tariffs, nor for the vast expansion of Presidential power to tax all goods entering the United States on a whim, the President's actions are ultra vires.

## CONCLUSION

Amici respectfully urge the Court to find that the tariffs imposed by the President are unlawful, and to grant the relief sought by Plaintiffs.

## CERTIFICATE OF COMPLIANCE

Counsel hereby certifies that the foregoing brief contains 3,298 words, in compliance with this Court's word limitations.

RESPECTFULLY SUBMITTED this 20th day of May, 2025.

CORR CRONIN LLP


s/ Steven W. Fogg
Steven W. Fogg, WSBA No. 23528
Kathryn C. M. Joy, WSBA No. 60056
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Ph: (206) 625-8600
Fax: (206) 625-0900
sfogg@corrcronin.com
kjoy@corrcronin.com

*Counsel to the Washington State Amici*

11

**APPENDIX: LIST OF AMICI CURIAE**

Lisa Jo Brown
    Mayor of Spokane, Washington

Manka Dhingra
    State Senate Deputy Majority Leader,
    45th Legislative District

Bob Ferguson
    Governor of Washington

Joe Fitzgibbon
    State Representative,
    34th Legislative District

Noel Frame
    State Senator,
    36th Legislative District

Greater Everett Chamber of Commerce

Bruce Harrell
    Mayor of Seattle, Washington

International Association of Machinists and
Aerospace Workers District 751

Iron Workers Local Union 86

Marko Liias
    State Senator,
    21st Legislative District

North Cascades Builders Supply

Northwest Regional Counsel, Sheet Metal,
Air, Rail & Transportation Local 66

Jamie Pederson
    State Senate Majority Leader,
    43rd Legislative District

Mike Pellicotti
    Treasurer of Washington

June Robinson
    State Senator,
    38th Legislative District

Jesse Salomon
    State Senator,
    32nd Legislative District

Society of Professional Engineering
Employees in Aerospace, IFPTE Local 2001

Derek Stanford
    State Senator,
    1st Legislative District

Chris Stearns
    State Representative,
    47th Legislative District

Teamsters 117

Javier Valdez
    State Senator,
    46th Legislative District

Man Wang
    Executive Director, Washington State
    China Relations Council

Washington Economic Development
Association

Susan Yirku
    Pacific County Economic Development
    Council

Appendix - 1