IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| THE STATE OF OREGON, THE STATE OF ARIZONA, THE STATE OF COLORADO, THE STATE OF CONNECTICUT, THE STATE OF DELAWARE, THE STATE OF ILLINOIS, THE STATE OF MAINE, THE STATE OF MINNESOTA, THE STATE OF NEVADA, THE STATE OF NEW MEXICO, THE STATE OF NEW YORK, and THE STATE OF VERMONT,<br><br>        Plaintiffs,<br><br>     v.<br><br>DONALD J. TRUMP, in his capacity as President of the United States; DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; UNITED STATES CUSTOMS AND BORDER PROTECTION; PETER R. FLORES, in his official capacity as Acting Commissioner for U.S. Customs and Border Protection; and THE UNITED STATES,<br><br>        Defendants. | Case No.  1:25-cv-00077-GSK-TMR-JAR<br><br>STATES' RESPONSE TO MOTION FOR A STAY OF ENFORCEMENT OF JUDGMENT PENDING APPEAL |

**PROPOSED ORDER**

Upon consideration of defendants' motion for a stay of the enforcement of judgments entered May 28, 2025, to permanently enjoin the United States from collecting tariffs collected pursuant to Executive Orders, it is hereby

ORDERED that defendants' motion is denied, and it is further

ORDERED that Slip Op. 25-66 and judgments (*V.O.S. Selections, Inc. v. Trump*, Court No. 25-00066, ECF No. 56; *Oregon v. Trump*, Court No. 25-00077, ECF No. 66) are effective upon dissolution of the stay of the U.S. Court Appeals for the Federal Circuit (Case No. 25-1812, Dkt. 7, May 29, 2025).

SO ORDERED.

Dated: _____          _____
         New York, New York                     JUDGE

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     LEGAL STANDARD.......................................................................................... 2

III.    ARGUMENT ....................................................................................................... 2

      A.      Defendants' appeal is unlikely to succeed. ............................................... 2

      B.      Defendants will not be irreparably harmed without a stay. ...................... 3

      C.      A stay of the injunction would irreparably harm the States...................... 6

      D.      The public interest disfavors a stay........................................................... 8

IV.     CONCLUSION................................................................................................... 10

CERTIFICATE OF COMPLIANCE WITH WORD LIMIT ...................................... 13

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Signature, Inc. v. United States*,
  598 F.3d 816 (Fed. Cir. 2010)...............................................................8, 9

*Atlas Powder Co. v. Ireco Chemicals*,
  773 F.2d 1230 (Fed. Cir. 1985)....................................................................3

*Bernhardt v. Los Angeles County*,
  339 F.3d 920 (9th Cir. 2003) .......................................................................9

*Califano v. Yamasaki*,
  442 U.S. 682 (1979).................................................................................6, 7

*Cassell v. Snyders*,
  990 F.3d 539 (7th Cir. 2021) .......................................................................9

*CPC Int'l Inc. v. United States*,
  896 F. Supp. 1240 (Ct. Int'l Trade 1995) ...................................................7

*Hilton v. Braunskill*,
  481 U.S. 770 (1987)......................................................................................2

*League of Women Voters of U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) .........................................................................8

*Learning Resources Inc. v. Trump*,
  No. 1:25-cv-01248, 2025 WL 1525376 (D.D.C. May 29, 2025) ...............5

*Metalcraft of Mayville, Inc. v. The Toro Co.*,
  848 F.3d 1358 (Fed. Cir. 2017)................................................................7, 8

*Pennsylvania v. New Jersey*,
  426 U.S. 660 (1976).....................................................................................3

*Nken v. Holder*,
  556 U.S. 418 (2009).....................................................................................2

*Restaurant Law Ctr. v. U.S. Dep't of Labor*,
  66 F.4th 593 (5th Cir. 2023) .......................................................................7

*Rodriguez v. Robbins*,
  715 F.3d 1127 (9th Cir. 2013) .....................................................................3

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*In re Section 301 Cases*,
   524 F. Supp. 3d 1355 (Ct. Int'l Trade 2021) ...........................................................................6

*Texas v. United States*,
   40 F.4th 205 (5th Cir. 2022) ......................................................................................................3

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)............................................................................................................................9

**Federal Statutes**

50 U.S.C. § 1701(b) .............................................................................................................................6

**Other Authorities**

U.S. Const. art. II, § 3 ......................................................................................................................9

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# I.    INTRODUCTION

Defendants' stay motion is principally based on claims about the effects of this Court's ruling on national security and diplomatic relations. Immediately after that motion was filed, the Administration publicly contradicted those claims by saying—repeatedly and forcefully—that negotiations with foreign trading partners were unaffected by this Court's decision. Top Administration officials explained that other countries recognized the underlying threat of tariffs remained through other mechanisms that remain untouched by the Court's ruling. For that reason, the Administration has reported, foreign nations have continued to press forward with trade negotiations.

That alone is reason to deny a stay pending appeal. But even if defendants' representations here were credited over their more recent public statements, a stay pending appeal still would not be warranted. The role of this Court is to decide the law, not to intercede in policy debates or diplomatic negotiations. And, in any event, a stay would not restore the credibility of tariff threats under IEEPA. As this Court held, IEEPA does not authorize the President to impose tariffs that exceed the limits in other tariff statutes or the statutory restrictions in IEEPA itself. If the Court's ruling reduces the leverage the defendants have in international negotiations, it is because it tells the world what this Court already knows: that the President's IEEPA tariff threats are empty because they are unlawful and therefore unenforceable. That flows from the reasoning of this Court's decision on the merits, not the specific relief in the judgment that a stay of enforcement would temporarily suspend.

No stay would give defendants what they actually lack, which is a court decision on the merits in their favor. This Court already has determined that they are not entitled to that, and the appellate courts will take up the issues in due course. But the President has no authority to impose the IEEPA tariffs, and the Court should not grant a stay just to allow defendants to continue to suggest that he does.

Page 1 -    STATES' RESPONSE TO MOTION FOR A STAY OF ENFORCEMENT OF
JUDGMENT PENDING APPEAL – *Oregon, et al. v. Trump, et al.*

On the other side of the ledger, a stay would inflict the very irreparable harms that this Court's decision is meant to stop. The balance of equities and public interest thus weigh strongly against granting a stay.

This Court need not consider defendants' alternative request for an administrative stay. The Federal Circuit granted an administrative stay while it reviews defendants' stay motion on an expedited schedule. That provides all the protection defendants need to ensure that their motion is heard.

## II.     LEGAL STANDARD

This Court considers four factors in determining whether the moving party has met its burden of showing that a stay pending appeal is appropriate:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). "The first two factors of the traditional standard are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

## III.     ARGUMENT

**A.     Defendants' appeal is unlikely to succeed.**

The merits of this case are clear. As this Court already explained at length, IEEPA does not authorize the President to impose unlimited tariffs that exceed the restrictions Congress has enacted in other statutes, including Section 122 of the Trade Act of 1974. (ECF 65 at 26–36.) And IEEPA does not authorize the President to impose tariffs merely for leverage in international negotiations if the tariffs do not "deal with" the identified threat. (*Id.* at 36–48.) Defendants are of course entitled to appeal, even if they are unlikely to prevail. But a weak merits argument is no basis for a stay. This Court should deny a stay on that basis alone. *See Nken*, 556 U.S. at 434 (observing that a "strong showing" of a likelihood of success is one of the critical factors in

Page 2 -    STATES' RESPONSE TO MOTION FOR A STAY OF ENFORCEMENT OF
JUDGMENT PENDING APPEAL – *Oregon, et al. v. Trump, et al.*

determining whether to grant a stay); *Texas v. United States*, 40 F.4th 205, 229 (5th Cir. 2022) (noting that a weak showing on the merits is sufficient to justify denying a stay).

**B.    Defendants will not be irreparably harmed without a stay.**

The purported harms defendants articulate are not the sort of irreparable harms that justify a stay. Defendants assert that the judgment below "jeopardizes ongoing negotiations with dozens of countries by severely constraining the President's leverage." (ECF 69 at 11 (Mot. 6).) Defendants' argument, in effect, asks the Court to reconsider its finding that IEEPA cannot be used for leverage alone. *See* ECF 65 at 45–47. Indeed, any loss of leverage in negotiations is due to the President's reliance on threats and actions that exceed his statutory authority. The government cannot "be heard to complain about damage inflicted by its own hand." *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (The federal government "cannot suffer harm from an injunction that merely ends an unlawful practice."); *Atlas Powder Co. v. Ireco Chemicals*, 773 F.2d 1230, 1231 (Fed. Cir. 1985) (rejecting a defendant's request to "continue the alleged infringements at the rate they occurred when the suit was filed, even though the assessment of likelihood of success had shown that such acts would probably be held unlawful"). Defendants may not want to comply with the substantive and procedural limits that the law imposes, but that is not a basis to let them continue to act unlawfully.

Of course, this Court's relief does not affect the many other levers of power the President has in trade policy. It does not preclude him from invoking Section 122, which grants authority—albeit limited authority—to impose tariffs, if there is in fact a large and serious balance-of-payment deficit. It does not preclude him from invoking Section 232, which has been used to impose tariffs based on national security risks. These authorities are sufficient to protect U.S. interests.

Page 3 -    STATES' RESPONSE TO MOTION FOR A STAY OF ENFORCEMENT OF
JUDGMENT PENDING APPEAL – *Oregon, et al. v. Trump, et al.*

Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

The Administration's senior leadership on economic policy agrees. Director of the National Economic Council, Kevin Hassett, wrongly maintains that IEEPA provides "the most authority for doing what we're exactly doing," but he also acknowledges that "there are three or four other ways to do it…." (Attachment 1 (Third Marshall Decl.) ¶ 3 & Ex. N; *see also id.* ¶ 11 & Ex. Q (U.S. Trade Representative Greer: "[I]f the case, you know, goes the other way, we have other tools as well.").) The President's Senior Counselor for Trade and Manufacturing, Peter Navarro, was even more specific: "any trade lawyer knows it's just a number of different options we can take. If you look at the kind of things we've already done, it kind of give you a roadmap on that. … There's 122, there's 301, there's 232, there's 338. There's all sorts of things we can do well within the law." (*Id.* ¶ 5 & Ex. O.) As Dr. Navarro explained, in the Administration's view, "the court basically tells us if we lose that we just do some other thing. *So nothing's really changed.*" (*Id.* ¶ 6 & Ex. O (emphasis added); *see also id.* ¶ 8 & Ex. P (Dr. Navarro: "The court … told us go do it another way. So you can assume that even if we lose we will do it another way.")); *id.* ¶ 13 & Ex. R (Secretary Lutnick: "[R]est assured, tariffs are not going away. He has so many other authorities that even in the weird and unusual circumstance where this was taken away, we just bring on another or another or another. Congress has given this authority to the President, and he's going to use it.").) The Administration is "not planning to pursue those [other authorities] right now" by its own choice "because [it is] very, very confident" in its appeal. (*Id.* ¶ 3 & Ex. N (quoting NEC Director Hassett).)

The Administration's public statements have also contradicted defendants' argument that this Court's judgment "will threaten to 'shatter our negotiations with dozens of countries' …." (*See* ECF 69 at 8 (Mot. 3) (quoting ECF 63 at 20 (Bessent Decl. ¶ 10)).) Even before the Federal Circuit's stay, Mr. Hassett said that this Court's decision is "certainly not going to affect the negotiations" over trade deals with other nations. (Marshall Decl. ¶ 3 & Ex. N.) After this Court's ruling, the U.S. Trade Representative Jamison Greer said "[a]ll the other countries I'm

Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

dealing with in negotiations are treating this as just kind of a bump in the road rather than any fundamental change." (*Id.* ¶ 11 & Ex. Q.) The Administration says it is "getting plenty of phone calls from countries saying, 'We saw the ruling. So, what? We're going to continue to negotiate in good faith because we understand that there's a problem. And based on that court decision, we understand that that court decision is not going to stop you from doing what you need to do. So, we're going to work with you.'" (*Id.* ¶ 9 & Ex. P (quoting Dr. Navarro); *see also id.* ¶ 11 & Ex. Q (Ambassador Greer: "[W]hen I woke up … the morning after the initial ruling—before we had the stay—…I had emails and texts from foreign officials saying … we're just going to keep negotiating with you as before. You know, we understand … this is litigation. Things go up and down. We understand the U.S. policy going forward. And we're negotiating with you as before."); *id.* ¶ 13 & Ex. R (Commerce Secretary Howard Lutnick: "The European Union sent in —after [this Court's decision]—their first offer. … All of the countries that are negotiating with us understand the power of Donald Trump and his ability to protect the American worker. And so what they're doing is they're negotiating with us. I think it cost us a week, maybe cost us a week, but then everybody came right back to the table."); *id.* ¶ 5 & Ex. O (Dr. Navarro saying "still, as we speak, having countries call us and tell us they want a deal. So these deals are going to happen.").) The Court need not credit defendants' predictive declarations to the contrary.

Even if defendants' stay motion's premise survived these statements, it is this Court's thorough *reasoning*—not the injunctive relief itself—that would undermine the credibility of the threat of future IEEPA tariffs. True, with a stay in hand, defendants could continue to demand that importers pay the illegal tariffs. But as defendants themselves recognize, importers would "assuredly receive payment on their refund with interest" when defendants lose on appeal. (ECF 69 at 13 (Mot. 8).) And, at that point, the tariffs would end. That promise saps the Executive's threat of future IEEPA tariffs of their teeth, making a stay of limited use to defendants. That is especially so now that two courts have declared the IEEPA tariffs unlawful, casting significant

Page 5 -    STATES' RESPONSE TO MOTION FOR A STAY OF ENFORCEMENT OF
        JUDGMENT PENDING APPEAL – *Oregon, et al. v. Trump, et al.*

doubt on the legality of the President's actions that will persist regardless of a temporary stay pending appeal. *See Learning Resources Inc. v. Trump*, No. 1:25-cv-01248, 2025 WL 1525376 (D.D.C. May 29, 2025) (holding that IEEPA does not authorize the imposition of tariffs and entering preliminary injunction).

Defendants also argue the injunction should be stayed to "protect[] the public fisc…." But the government has no legitimate interest in collecting unlawful tariffs. In addition, IEEPA powers "may only be exercised to deal with an unusual and extraordinary threat … and may not be exercised for any other purpose." 50 U.S.C. § 1701(b). By statute, any fiscal interest in collecting these tariffs is not cognizable.

**C.    A stay of the injunction would irreparably harm the States.**

Defendants do not dispute that the tariffs will cause goods, equipment, and services from vendors to cost more for the States. Yet, relying on the general proposition that injunctions should be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979), they argue that any injunction should exclude non-parties because the government "will issue refunds" should the States prevail on appeal.[1] (ECF 69 at 8 (Mot. 3).)

That argument is untenable in this case. Even if tariff payments can eventually be recovered by importers, few of those recoveries would be passed to the States. As the States have already established, the States purchase goods from an enormous variety of vendors who will raise prices due to the tariffs. (*E.g.*, ECF 14-4 ¶ 7 (Emerson Decl. (Or.)); ECF 14-13 ¶ 7 (Ward Decl. (Ariz.)); ECF 14-5 ¶¶ 8–14, Exs. A–F (Hayes Decl. (Minn.)); ECF 14-10 ¶¶ 9, 13–14, 17, Exs. B–D (Root Decl. (Minn.))). Once they pass the tariff costs on to the States in the form of increased prices, States likely cannot recover those costs. The States have no obvious legal

---

[1] *But see In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1366, 1371 (Ct. Int'l Trade 2021) (holding that "liquidation will result in irreparable economic harm" absent "stipulation" that government "will refund the unlawfully collected duties" for a "specific entry").

Page 6 -    STATES' RESPONSE TO MOTION FOR A STAY OF ENFORCEMENT OF
JUDGMENT PENDING APPEAL – *Oregon, et al. v. Trump, et al.*

remedy against vendors, contractors, or importers to recover paid tariff surcharges or negotiated price increases while a stay was in effect. And even if the States could force repayment, it would not be economically feasible to do so, given the vast number of businesses involved. Thus, if defendants can continue to charge tariffs to others, the States will continue to suffer irreparable harm in the form of tariffs passed along to them. That is not a trivial sum: the plaintiff states' annual losses are conservatively estimated at $1.6 billion per year. (ECF 14-2 ¶ 52 (Hines Decl.).) For this reason, limiting injunctive relief to the parties would not "provide complete relief to the plaintiffs." *See Califano*, 442 U.S. at 702.

Nor would refunds remedy the administrative costs, procurement frustration, budgetary uncertainty, and related harms caused by the President's unlawful tariffs. *See Restaurant Law Ctr. v. U.S. Dep't of Labor*, 66 F.4th 593, 598 (5th Cir. 2023) ("[N]onrecoverable compliance costs are usually irreparable harm."); *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1368 (Fed. Cir. 2017) ("Where the injury cannot be quantified, no amount of money damages is calculable, and therefore the harm cannot be adequately compensated and is irreparable."). For example, if left in place, the tariffs will seriously and irreparably disrupt procurement by state agencies and universities by forcing them to forgo purchases that are critical to their missions to account for the unexpected increased costs. (ECF 14-4 ¶ 6 (Emerson Decl. (Or.)); *see also* (ECF 14-7 ¶¶ 8–9, 16 (Johnson Decl. (Ill.)) (the Illinois Department of Innovation & Technology has faced difficulties in negotiating contracts and in placing orders on existing contracts, requiring the agency to pause its efforts to replace older devices used by state employees); ECF 14-9 ¶¶ 12–13 (Ramsdell Decl. (Or.)) (for the Oregon Department of Transportation, increased tariff costs are likely to result in the purchase of fewer units of tariffed goods, such as snow blowers required to clear snow from the state's roadways)). The result will be reduced or poorer services to residents, whether due to relying on outdated equipment, delaying deployment of improvements, or delaying other agency spending. Those are only some examples of many. And

Page 7 -   STATES' RESPONSE TO MOTION FOR A STAY OF ENFORCEMENT OF
          JUDGMENT PENDING APPEAL – *Oregon, et al. v. Trump, et al.*

those harms cannot be quantified or redressed by a reimbursement of tariffs months or years hence. *See Metalcraft of Mayville, Inc.*, 848 F.3d at 1368); *CPC Int'l Inc. v. United States*, 896 F. Supp. 1240, 1243 (Ct. Int'l Trade 1995) ("Essential to the inquiry into irreparable harm is the immediacy of the injury and inadequacy of future corrective relief.").

A stay that allowed the President to continue to raise or lower tariffs at his whim would inflict further harm. The constantly changing tariff rates deprive the States of reasonable certainty as to how much goods and services will cost, which bids from contractors are the lowest, and what their agencies and universities can afford. Over the past three months, the effective tariff rates on Canada, Mexico, China, and the rest of the world have fluctuated wildly, including the tariffs on imports from China ranging from 10 percent to 145 percent. The sudden and drastic increases, pauses, and exceptions to the tariffs, as well as the President's recent threats to increase tariffs again, make it impossible for the States to form expectations with any degree of reasonable certainty. If state entities must plan their budgets with a potential tariff rate on any given item ranging from 10 to 145 percent, depending on whether the President decides to increase, suspend, or modify a tariff on any given date, that undermines their ability to allocate resources and make investments. (*E.g.*, ECF 14-9 ¶ 11 (Ramsdell Decl. (Or.); ECF 14-11 ¶ 16 (Shabram Decl. (Or.)); ECF 14-13 ¶ 9–10 (Ward Decl. (Ariz.)).) And setting aside funding for tariff contingencies reduces the funds available for investments in universities' and agencies' core missions, including research, infrastructure, and public services. (*E.g.*, ECF 14-11 ¶ 18 (Shabram Decl. (Or.)); ECF 14-9 ¶ 7 (Ramsdell Decl. (Or.)); ECF 14-6 ¶ 38 (Jaros Decl. (Colo.)).) Again, those harms "cannot be quantified," and "therefore the harm cannot be adequately compensated and is irreparable." *Metalcraft of Mayville, Inc.*, 848 F.3d at 1368.

**D.    The public interest disfavors a stay.**

Finally, the public interest weighs heavily against a stay. There is a strong public interest in protecting the rule of law and not allowing the Executive Branch to unlawfully impose tariffs

Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

at its whim, muddled by threats, additions, exceptions, and pauses. *See Am. Signature, Inc. v. United States*, 598 F.3d 816, 830 (Fed. Cir. 2010) ("The public interest is served by ensuring that governmental bodies comply with the law[.]"); *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action."). That interest is heightened where, as here, the President's unlawful actions have devastating economic consequences nationwide. (ECF 14-2 ¶¶ 54–55 (Hines Decl.)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." (Internal quotations omitted.)); *Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021) (public interest includes "the consequences of granting or denying the injunction to non-parties"); *Bernhardt v. Los Angeles County*, 339 F.3d 920, 932 (9th Cir. 2003) (same).

Defendants nonetheless assert that "[t]he public interest requires that the President be able to take all appropriate and feasible action to swiftly address identified threats to the United States' economy, military preparedness, and national security." (ECF 69 at 14 (Mot. 9).) True, but Article II and legislative delegations have provided him ample authority to do so. And the public interest also requires that the President uphold the Constitution of the United States, which includes observing the limits of Executive power via-a-vis the other two branches of government. Fundamentally, the President must still act within the bounds of the law, regardless of any identified threat. *See* U.S. Const. art. II, § 3 (imposing duty on President to "take Care that the Laws be faithfully executed"). Any public interest in swiftly addressing identified threats is thus limited to appropriate and *lawful* action. *See Am. Signature, Inc.*, 598 F.3d at 830 ("The public interest is served by ensuring that governmental bodies comply with the law[.]"). And IEEPA does not authorize the President to impose unlimited tariffs that exceed the restrictions

Page 9 -   STATES' RESPONSE TO MOTION FOR A STAY OF ENFORCEMENT OF
          JUDGMENT PENDING APPEAL – *Oregon, et al. v. Trump, et al.*

Congress has enacted, nor does it authorize the President to impose tariffs merely for leverage in international negotiations.

## IV.    CONCLUSION

Defendants' motion for a stay should be denied.

DATED: June 2, 2025

Respectfully submitted,

<table>
<tr><td>

**DAN RAYFIELD**
Attorney General
State of Oregon

By: */s/ Brian Simmonds Marshall*
Benjamin Gutman
Solicitor General
Dustin Buehler
Special Counsel
Brian Simmonds Marshall
Christopher A. Perdue*
Nina R. Englander*
Senior Assistant Attorneys General
YoungWoo Joh
Alexander C. Jones*
Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Brian.S.Marshall@doj.oregon.gov
Chris.Perdue@doj.oregon.gov
Nina.Englander@doj.oregon.gov
YoungWoo.Joh@doj.oregon.gov
Alex.Jones@doj.oregon.gov

Attorneys for the State of Oregon

</td><td>

**KRISTIN K. MAYES**
Attorney General
State of Arizona

By: */s/ Syreeta A. Tyrell*
Joshua D. Bendor
Solicitor General
Syreeta A. Tyrell
Assistant Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004
Phone: (602) 542-8310
Joshua.Bendor@azag.gov
Syreeta.Tyrell@azag.gov
ACL@azag.gov

Attorneys for the State of Arizona

</td></tr>
</table>

Page 10 -  STATES' RESPONSE TO MOTION FOR A STAY OF ENFORCEMENT OF
JUDGMENT PENDING APPEAL – *Oregon, et al. v. Trump, et al.*

Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**PHILIP J. WEISER**
Attorney General
State of Colorado

By: */s/ Sarah H. Weiss*
Sarah H. Weiss
*Senior Assistant Attorney General*
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
Sarah.Weiss@coag.gov

Attorneys for the State of Colorado

**WILLIAM TONG**
Attorney General
State of Connecticut

By: */s/ Michael K. Skold*
Michael K. Skold
Solicitor General
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020
Michael.skold@ct.gov

Attorneys for the State of Connecticut

**KATHLEEN JENNINGS**
Attorney General
State of Delaware

By: */s/ Ian R. Liston*
Ian R. Liston*
Director of Impact Litigation
Vanessa L. Kassab*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

Attorneys for the State of Delaware

**KEITH ELLISON**
Attorney General
State of Minnesota

By: */s/ Pete Farrell*
Peter J. Farrell
Deputy Solicitor General
445 Minnesota Street, Suite 600
St. Paul, Minnesota, 55101
(651) 757-1424
Peter.Farrell@ag.state.mn.us

Attorneys for the State of Minnesota

**AARON D. FORD**
Attorney General
State of Nevada

By: */s/ Heidi Parry Stern*
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov

Attorneys for the State of Nevada

**RAÚL TORREZ**
Attorney General
State of New Mexico

By: */s/ James W. Grayson*
James W. Grayson*
Chief Deputy Attorney General
Amy Senier
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508
(505) 490-4060
jgrayson@nmdoj.gov
asenier@nmdoj.gov

Attorneys for the State of New Mexico

Page 11 -  STATES' RESPONSE TO MOTION FOR A STAY OF ENFORCEMENT OF
JUDGMENT PENDING APPEAL – *Oregon, et al. v. Trump, et al.*

Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**KWAME RAOUL**
Attorney General
State of Illinois

By: */s/ Gretchen Helfrich*
Cara Hendrickson
Assistant Chief Deputy Attorney General
Gretchen Helfrich
Deputy Chief, Special Litigation Bureau
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, IL 60603
Tel. (312) 814-3000
Cara.Hendrickson@ilag.gov
Gretchen.helfrich@ilag.gov

Attorneys for the State of Illinois


**AARON M. FREY**
Attorney General
State of Maine

By: */s/ Vivian A. Mikhail*
Vivian A. Mikhail
Deputy Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8800
Vivian.mikhail@maine.gov

Attorneys for the State of Maine

* *Admission application forthcoming*

** *Admission application pending*

**LETITIA JAMES**
Attorney General
State of New York

By: */s/ Rabia Muqaddam*
Rabia Muqaddam
Special Counsel for Federal Initiatives
(929) 638-0447
Mark Ladov
Special Counsel
Office: (212) 416-8240
Cell: (347) 814-9434
28 Liberty St.
New York, NY 10005
rabia.muqaddam@ag.ny.gov
mark.ladov@ag.ny.gov

Attorneys for the State of New York


**CHARITY R. CLARK**
Attorney General
State of Vermont

By: */s/ Ryan P. Kane*
Ryan P. Kane
Deputy Solicitor General
109 State Street
Montpelier, VT 05609
(802) 828-2153
Ryan.kane@vermont.gov

Attorneys for the State of Vermont

Page 12 -  STATES' RESPONSE TO MOTION FOR A STAY OF ENFORCEMENT OF
JUDGMENT PENDING APPEAL – *Oregon, et al. v. Trump, et al.*

Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

Pursuant to the Court's order (ECF 71), I certify that this response brief, including headings, footnotes, and quotations (but excluding the table of contents, table of authorities, counsel's signature blocks, and this certificate), does not exceed 5,000 words.

/s/ Brian Simmonds Marshall
Brian Simmonds Marshall
Senior Assistant Attorneys General
Oregon Department of Justice

Of Attorneys for the State of Oregon

Page 13 - STATES' RESPONSE TO MOTION FOR A STAY OF ENFORCEMENT OF
JUDGMENT PENDING APPEAL – *Oregon, et al. v. Trump, et al.*